Per Curiam.
The defendant was convicted of the crime of murder in the first degree at the oyer and terminer held in Essex county in March, 1892. The indictment upon which he was convicted contained two counts, the first of which charged that the defendant killed one Bedelía Taylor on the 80th day of August, 1890, at the town of Westport, in the county of Essex, by means and in a manner to the jurors unknown.
The second count charged that the defendant, without a design to effect death, killed Bedelía Taylor while he was engaged in an attempt to commit upon her person the crime of rape. The defendant has appealed to this court from the judgment of death pronounced upon him by the court below. The deceased was a woman over sixty years of age and lived alone in a small shanty near the highway running between Mineville and Westport, in the county of Essex. Her nearest neighbor on the Mineville side occupied a house about three-quarters of a mile from her residence, while her neighbor on the Westport side lived about 80 or 90 rods distant.
The deceased was last seen alive about seven o’clock in the evening of the 30th of August, 1890, walking in the direction of her house and not far from the residence of a Mr. Sharrow, her nearest neighbor on the Mineville side. A short time after half-past eight of the same evening she was found on the floor of one of the rooms in her house lying on her back, almost naked and quite dead.
There was no direct evidence as to the killing, and the prosecution sought to make out the case against the defendant by proof of circumstances from which the jury were asked to draw the inference that defendant was the guilty party. He was shown to have been at a small pond in the neighborhood of the residence of the deceased, in company with other young men, during the afternoon, his companions having fished in the pond and he coming upon them and talking and drinking with them.
In the evening, about half-past eight o’clock, the defendant came to the house of Mr. Baker, the nearest to that of the deceased, and, obtaining admittance after rapping, proceeded to give an account of what he had heard as he was passing along the road in front of the house of the deceased. He said he heard noises and cries of “ help,” “ murder,” and shuffling of feet and the sound of voices in the house as through a struggle was going on, but he did not understand what was said, as it seemed to be in the Swedish or Dutch language. His is the only account given as to his movements after he separated from his fishing companions and *72 prior to his knocking at the door of Mr. Baker. He asked the witness, a Mrs. Stockwell, to whom he spoke at Baker’s house, to> get a lantern, and that some person might go back with him to the house of Mrs. Taylor to see what, if anything, had happened. A lantern was procured and a young man staying temporarily at the Baker house went with the defendant to the house of the deceased, and, on trying the door, found that it had been partly burst open, so that the bolt was no longer held by the hasp. They walked in through the door and the defendant went towards the middle of the room. The body of Mrs. Taylor was found in this room lying oh its back with some kind of a covering over the face; the night dress was wound around the body near the shoulders and the rest of the body was substantially without clothing. Upon discovering that Mrs. Taylor was dead the defendant and his companion left the house and returned to that of Mr. Baker, where the facts were stated and where the defendant passed the night, it being thought too late to do anything that night in the way of informing the coroner of the death.
During the day preceding the night of the killing it was proved by several witnesses who had seen defendant, that his face bore no marks of any scratch or wound, while on the next day (Sunday), witnesses noticed scratches on his cheek, which were variously described by them. It was proved that he gave two different accounts of the manner in which he received them, one that he was cutting a tree and one of its branches struck him and caused the scratches, the other that he had scratched himself while picking blackberries along the road the evening before. A postmortem examination of the deceased revealed the fact that several of her libs had been broken, but the immediate cause of her death was left somewhat in doubt. The medical experts were unable to say whether her person had in fact been violated, as they failed to find any certain physical indications of such violation.
Evidence of other circumstances of more or less importance was given, and from the whole case the prosecution claimed that it was proper for the jury to infer that the scratches on the cheek of the defendant were received in the course of a hand to hand struggle with the deceased, and which resulted in her death. The evidence regarding these scratches, was, as it seems to us, the most important part of the people’s case.
The prosecution was based wholly upon facts of a circumstantial nature. While it is true that circumstances when fully and satisfactorily proved may lead to an inference of the guilt of an accused party quite as reliable as direct evidence by an eye wit-: ness of the crime, yet it is vitally important that no error should intervene to the possible prejudice of the accused in the process of proving any important fact upon which, with others, the inference of guilt may rest.
The existence of the scratches Sunday morning on the defendant’s cheek is not denied. Who made them, and how they were made, was the important fact. If made by the tree or the blackberry bushes, their existence was wholly without importance, *73 while if made by the deceased, the fact would be regarded as a most material, if not a controlling one against the defendant.
One of the medical experts while on the stand had testified, on .cross-examination by defendant’s counsel, that he had made an examination of the body of Mrs. Taylor soon after he arrived at the house, and while it lay on the floor; the arms were across the chest, partly folded, the right hand clenched, and the left hand partly open and partly closed. He examined the finger nails for the purpose of discovering whether any cuticle or substance from ■a human body was contained within or under the nail, and he failed to discover any. He said that ordinarily any scratch made by the finger nails of a human being upon the face of another human being would be accompanied by the presence of cuticle under the nails, if the person had long finger nails. He said he had ■in mind that if the scratches were made by the nails of the deceased, cuticle might be found under them.
Upon re-direct examination by counsel for the prosecution, and evidently for the purpose of explaining the absence of any cuticle under the nails of the deceased, it was shown that the witness discovered the nails of the deceased were very short, as if she had been in the habit of biting them off; they were almost entirely gone, and that was true as to all the finger nails. The witness was then asked if he saw the scratches on the cheek of the defendant that day and he said he did, and then under objection and exception the witness was asked whether or not there were nails of the deceased sufficient to make a mark such as he saw upon defendant, and he answered that he thought they were sufficient.
This was most important evidence, but at the same time was nothing more than an opinion based upon what the witness saw as to the scratches and the nails, and that opinion was given upon .a subject which was not at all of a nature calling for or permitting expert testimony.
The witness could properly describe the extent of the scratches, where they were, their condition when he saw them and his opportunities for examination. He could also describe the condition of the nails of the deceased with regard to length or any ■other fact mateiial to the investigation, but the opinion which he formed after the examination both of the scratches and the nails, that the latter could produce the former, was an opinion merely ■and at the same time it was not an opinion upon any matter of ■science or anything that required special skill or experience, or ■upon a subject m regard to which the jury could not form an opinion intelligently and properly after the facts were placed before it and just as well as the witness. It was an effort to give ■evidence of an opinion of a medical expert upon a question in regard to which he was no more competent to give an opinion any one not a physician, and it was upon a matter which was of the most vital importance to the defendant. Hpon further ■cross-examination the witness said, in describing the condition of the nails, that he meant that the loose part was bitten off so that *74 the end of each finger projected beyond the nails. In truth the witness stated facts from which it was perfectly easy for the jury to decide whether the nails in all probability could or could not, have made the scratches. There was nothing of a medical expert nature in the evidence.
Neither was it of that class of opinion evidence which is occa-' sionally admitted as the general summing up 'of the effect of numerous small details upon a witness, the details in themselves being almost impossible to adequately describe, and yet in their total making a distinct and plain impression. Of this kind is the question sometimes put to a witness who saw the person, whether such person was intoxicated upon a certain occasion. It has also been held competent to prove by an eye witness that one person seemed to be very fond of another, or that two persons were mutually fond of each other. It is nothing but an opinion, and yet is received almost from the necessity of the case, because of the admitted inadequacy of language and memory to describe and reproduce all the various facts which caused the impression to be made upon the witness which is summed up in his opinion.
These are, however, exceptions to the general rule that witnesses must be confined to facts and that their opinions are inadmissible. The exceptions should not be extended without strong reasons, which we are quite clear do not exist in this case.
As there must be a new trial, it is proper to state that we think the indictment was sufficient, and that no error was committed in refusing to compel the counsel for the prosecution to elect upon 'which count they would proceed to the trial of the defendant We think also there was sufficient proof of the corpus delicti. It would be a very strained inference from the evidence in the case, that this woman either herself inflicted the wounds upon her person, or that they came from a fall which she accidentally suffered, and which was, or may have been, caused by some sudden attack of disease. At any rate, the evidence was ample upon which a jury might come to the conclusion that criminal means were the cause of her death.
The court was requested to charge the jury that mere probability of guilt, however strong, was not sufficient to warrant a conviction. The court refused such request and said that he would charge to the contrary, that probabilities are what you have to> deal with in matters of circumstantial evidence. As an abstract proposition we think the court erred in its refusal. Mere probability is not enough to base a conviction upon. The probability must be of that class which is based upon facts which are inconsistent with any other reasonable explanation than that the defendant is guilty.
But it is evident from other portions of his charge that the learned judge did not mean that mere probability, separated from everything else in the ca.se and ignoring all other rules of circumstantial evidence, was sufficient to convict. He had already plainly and explicitly stated to the jury that in order to justify a conviction of any crime the facts must be inconsistent with any other rational explanation or hypothesis, and that before a conviction *75 ■could be justified the evidence must exclude to a moral certainty every other hypothesis but that of guilt. It is evident that it was of probabilities thus explained that the learned judge was thinking, and it seems clear enough that the directions already given would prevent the jury from falling into any errors as to the character and strength of the evidence necessary to convict, and as thus explained the charge was proper.
Under the recent decisions there would seem to have been no ■error in proving the defendant’s declarations when examined before the coroner. People v. Chapleau, 121 N. Y., 267; 30 St. Rep., 989, and cases cited.'
The killing in this case occurred in a rural community and ■under circumstances which were very likely to cause great excitement. A helpless old woman is found dead in her own house and proof of the killing can only be made out by various circumstances of greater or less weight. In such cases courts must see to it that while the law is strictly enforced, the evidence upon which to base a finding of murder shall be of a competent character and the facts must be properly proved.
The judgment must be reversed and a new trial granted to defendant.
All concur.